IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-01-64(5) |
| | § | C.A. No. C-02-431 |
| RICHARD ALVAREZ, JR., | § | |
| | § | |
| Defendant-Movant. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO VACATE SENTENCE
AND DENYING CERTIFICATE OF APPEALABILITY**

This Court denied Movant Richard Alvarez, Jr.'s ("Alvarez") motion to vacate his sentence under 28 U.S.C. § 2255 in an order entered December 31, 2003. (D.E. 290, 291).[1] Alvarez timely appealed. (D.E. 295). On September 21, 2004, the Fifth Circuit granted Alvarez a certificate of appealability ("COA") only as to his claim that his attorney failed to appeal despite a request from him. (United States v. Alvarez, No. 04-40350, September 21, 2004 Order granting in part and denying in part request for COA).

After briefing on the issue, the Fifth Circuit issued a *per curiam* opinion on March 27, 2006. (United States v. Alvarez, No. 04-40350 (March 27, 2006)). The appellate court concluded that this Court abused its discretion by denying Alvarez's claim without holding an evidentiary hearing. (Id. at 2). Accordingly, the panel vacated this Court's denial of

---

[1] Docket entries refer to the criminal case, Cr. No. C-01-64.

1

Alvarez's failure to appeal claim, and remanded for further proceedings. (Id. at 3).

On July 6, 2006, the Court held an evidentiary hearing to address the limited issue of whether Alvarez was denied the effective assistance of counsel due to his counsel's alleged failure to appeal. Alvarez was represented at the hearing by appointed counsel, Patrick McGuire. For the reasons set forth on the record at the conclusion of the hearing, and for the reasons set forth in more detail herein, the Court denies Alvarez's motion. The Court also denies Alvarez a COA.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

The procedural background of Alvarez's underlying criminal case was set forth in the Court's prior order denying his § 2255 motion. (See D.E. 290 at 2). Familiarity with that order is assumed. Additionally, his § 2255 motion contained a number of other claims, all of which the Court denied. Neither this Court nor the Fifth Circuit granted him a COA as to any of those other claims. Thus, they are not properly before the Court.

### B. Evidentiary Hearing

As noted, an evidentiary hearing was held on July 6, 2006, at which Alvarez was represented by current counsel, Patrick McGuire. In addition to calling Alvarez as a witness, his counsel also elicited testimony from Alvarez's father and co-defendant, Richard

Alvarez, Sr. ("Alvarez, Sr."), and another co-defendant, Eduardo Solis. Counsel also called Abel Alvarez, Alvarez's paternal uncle. The United States called Alvarez's counsel, Vincent Gonzalez, as well as Guy Williams, who represented Alvarez, Sr. in the underlying proceedings. The government also called as a witness Assistant United States Attorney ("AUSA") Patti Hubert Booth, who prosecuted the criminal case. Mr. McGuire cross-examined all three government witnesses.

### 1.    Alvarez's Testimony and Contentions

Alvarez testified that right after sentencing, he asked Gonzalez to appeal his sentence. In response, Gonzalez said he "would take care of it." (Digital Recording of July 6, 2006 Evidentiary Hearing ("Rec.") at 8:43). Alvarez testified that he also asked Gonzalez why he was held responsible for relevant conduct, when his understanding of his plea agreement was that he would not be attributed any relevant conduct and that he would receive a sentence of five years.

Alvarez also testified that, on the day of his rearraignment, prior to entering his plea, Gonzalez had told him that he would be at an offense level of 26, and with a reduction for acceptance of responsibility, he would be at a level 23. Gonzalez had told him that this would result in a sentence of five to seven years. Gonzalez further told him that, with a year's reduction for participation in a drug treatment program and good time credits, he would likely serve only two and one-half or three years. Gonzalez also told him at that time that if Alvarez did not receive the five-year sentence he expected, Gonzalez would appeal.

Alvarez testified that both his father and his father's attorney, Guy Williams, were within earshot of these discussions.

Alvarez further testified that he called Gonzalez from the San Patricio County Jail within a few days after sentencing to ask about his appeal.[2] During that telephone conversation, Alvarez claims he asked Gonzalez something about what "the deal" was with his appeal. According to Alvarez, Gonzalez tried to discourage him from appealing by telling him that he could have gotten a much higher sentence, but Alvarez insisted at that time that he wanted to appeal. Alvarez said that he next spoke to Gonzalez when Alvarez came back to Karnes City in 2002 to pursue cooperating with the government. At that time, he asked Gonzalez about the status of his appeal and Gonzalez told him that there was nothing to appeal.

During his testimony, Alvarez also made claims that the Court found wholly unbelievable, including claims that AUSA Booth told him directly that he would only get five to seven years, and that his attorney had heard that promise. He also testified that AUSA Booth had instructed him not to tell the Court that she had promised him that specific sentence. Indeed, he explicitly testified that AUSA Booth had told him "to lie to the judge." (Rec. at 9:26). He also testified that, during his sentencing, AUSA Booth had threatened him that it would cause trouble if he told the judge that she had promised him a specific

---

[2] According to Alvarez's § 2255 attorney, Mr. McGuire, the San Patricio County Jail's records from that time-period had been purged. Additionally, there were no written communications between Alvarez and Gonzalez concerning the status of any appeal.

sentence.[3]

Based on his testimony, Alvarez contends both that he directly asked his counsel to appeal immediately after sentencing, and that Gonzalez had earlier promised him that if Alvarez did not receive a five-year sentence, Gonzalez would appeal. He thus contends that his attorney was deficient for failing to appeal.

In addition to relying on his testimony concerning these two conversations, Alvarez's attorney pointed to a number of other pieces of evidence in support of the contention that Alvarez believed he was getting a five-year sentence, or that his attorney would appeal. In particular, he noted that the offense carried a five-year mandatory minimum, and that both the government and his attorney asked for something close to a five-year sentence at sentencing. (See S. Tr. at 7-8 (both AUSA Booth and Gonzalez asking for an offense level of 26, which would result in a guideline range of 63 to 78 months with a criminal history category I, 70 to 87 months for a criminal history category II, and 78 to 97 months for a criminal history category of III); S. Tr. at 42-43 (Gonzalez asking the Court to consider a sentence in the five-year range)).[4]

Mr. McGuire also pointed to the striking of a provision in Alvarez's plea agreement as support for Alvarez's contention that he was told no relevant conduct would be attributed

---

[3] Booth denied these allegations in their entirety. See infra at page 10.

[4] As noted in the Court's previous order, the Court found Alvarez's total offense level to be a 31. Coupled with his criminal history category of III, the resulting guideline range was 135 to 168 months. The Court downwardly departed to 120 months due to Alvarez's age, "lack of education, the disintegration of his family at an early age, [and] his lack of guidance from anybody." (S. Tr. at 46).

to him. Specifically, the following originally appeared in Alvarez's plea agreement, but was crossed out an initialed by Gonzalez: "The government agrees and recommends to the Court that the relevant conduct that is reasonably foreseeable and readily provable, falls at a level of 30, pursuant to 2D1.1 of the Sentencing Guidelines" (See D.E. 168).

 According to AUSA Booth, she had included the provision in an attempt to limit the relevant conduct attributable to Alvarez, Jr., because she believed his offense level would be higher than 30. Apparently, though, Gonzalez told her that his client and his client's father did not want that provision in the plea agreement. She explained to him that Alvarez could then be found to have a higher offense level, and he said he understood, but that was what his client wanted. Booth's recollection is not entirely consistent with what appears in the rearraignment transcript. That is, the rearraignment transcript reflects that the provision was deleted because Alvarez believed that the base offense level might prove to be lower than 30. On the record at rearraignment, Booth stated that she thought the base offense level might be lower than 30 for Alvarez, and also indicated that Alvarez did not want the provision in his plea agreement. (R. Tr. at 31; see also D.E. 290 at 9 & n.3).

 As Mr. McGuire pointed out, moreover, Booth actually argued at sentencing for an offense level of 26. Alvarez thus argues that, contrary to Booth's assertion, the deleting of the provision was intended to benefit Alvarez, Jr., because his offense level could have been lower than 30, just as the government and his counsel ultimately recommended. Alvarez apparently contends that this fact (and the deletion of the provision in the plea

agreement) lend additional support to his testimony that he was promised that no relevant conduct would be attributed to him.[5]

### 2.     Alvarez, Sr.'s Testimony

Alvarez, Sr. testified that he is Alvarez's father and co-defendant. He testified that on the day of the rearraignment, he, his attorney Williams, his son Alvarez, Jr., and his son's attorney Gonzalez, were all sitting together at the same defense table in the courtroom. He said Gonzalez assured him that his son would receive a five-year sentence and that there would not be any relevant conduct assessed for his son. He also testified that he asked Gonzalez how much time his son would actually serve, and that Gonzalez told him Alvarez would serve about two or two and a half years. Alvarez, Sr. also testified that Gonzalez told him that, if for some reason the prosecutor broke her word, then Gonzalez would appeal the sentence.

He also testified that a similar conversation occurred the day before the rearraignment, when his attorney Williams came to see him at the Sinton County Jail. Williams purportedly told him that Gonzalez had told Williams that Patti Booth had a "five-year deal" for all of the defendants, and that relevant conduct would not exceed level 30. Williams told Alvarez, Sr. that he did not trust Patti Booth to keep her word, but Gonzalez

---

[5] There is a fundamental problem with all of Alvarez's contentions about being "promised" certain things with regard to his sentence, which the Court discussed in its prior order denying his § 2255 motion. Specifically, Alvarez denied under oath at his rearraignment that any such promises were made. (See D.E. 290 at 4-9 (discussing these claims); see also R. Tr. at 29, 31-32 (Alvarez denying – twice – that anyone had promised him a specific sentence); R. Tr. at 28-29 (Alvarez testifying that he understood the Court was not bound by the terms of the plea agreement)).

had told Williams that Patti Booth would keep her word. If she did not, however, Gonzalez had told Williams that he would appeal and "get the five-year deal back."

On cross-examination, Alvarez, Sr. further testified that on the date of the rearraignment, he had heard AUSA Booth tell both Gonzalez and Williams that there would be no relevant conduct for Alvarez. He also testified that on the date of sentencing, if he "recalled correctly," his son had mentioned something about an appeal to Gonzalez.[6]

Finally, in response to questioning from the Court, Alvarez, Sr. indicated that he felt responsible what had happened to his son, and for his son getting more than a five-year sentence. He was attempting to help his son with his case, and that is why he was talking to Gonzalez about his case during plea negotiations. He said the lower sentence was important to him because Alvarez, Jr. was his son.

### 3. Abel Alvarez's Testimony

Abel Alvarez, the brother of Alvarez, Sr. and the uncle of Alvarez, was a credible witness, although his testimony was largely irrelevant to the contested issues. Abel Alvarez testified that he resided in Kingsville, that he had worked for a chemical company for two and a half years, and that, prior to that, he was self-employed as a carpenter. He had never been convicted of a felony crime, and had never lost a job or not been able to get a job because of drug use. Abel Alvarez also testified that he was married with two grown

---

[6] Notably, Alvarez, Sr.'s testimony on this point conflicts with his son's testimony that only Alvarez, Jr. and Gonzalez were present when he asked his lawyer to appeal immediately after sentencing. The Court does not find Alvarez, Sr.'s testimony on this point credible.

children, and had been married for 31 years.

He testified that, approximately one year or eighteen months after sentencing, Alvarez, Sr., requested that he visit Gonzalez to see if there was anything Gonzalez could do to help Alvarez, Jr. He testified that he went to Gonzalez's office and asked Gonzalez why Richard Alvarez, Jr.'s case was not appealed, and that Gonzalez told him there was nothing to appeal. Abel Alvarez admitted, however, that he had no knowledge as to whether or not Alvarez, Jr. had asked Gonzalez to appeal or whether Gonzalez had ever promised to appeal.

### 4. Eduardo Solis' Testimony

Solis testified that he was a co-defendant of Alvarez, Sr. and Alvarez. He testified that, on the day of the rearraignment, Alvarez's lawyer said that if Alvarez did not receive the five-year deal he had been promised, then the lawyer would appeal. He also said that his lawyer, and Alvarez, Sr.'s lawyers said essentially the same thing, i.e., that if they didn't get the deal they had been promised, the lawyers would appeal.

### 5. Guy Williams' Testimony

The government called Guy Williams, who had represented Alvarez, Sr. during the criminal proceedings. Williams testified that he did not remember any conversation with his clients or any other defendant that each or any of them would get a five-year sentence, nor did he recall any such conversation with or promise by AUSA Booth. He likewise did not recall any agreement concerning five years for any of the defendants. He further

testified that, at the time of the plea, there was no agreement of a five-year sentence, and he did not see how there could have been, because the guidelines were above that. He testified that he understood that and that his client understood that.

He also testified that he did not recall anyone talking about appeal on the day of the rearraignment, nor did he recall any statements by anyone that day stating that there would be no relevant conduct assessed toward Alvarez. Additionally, prior to testifying he had reviewed his notes, and there were no references to those subjects in his notes, either.

### 6.     Gonzalez's Testimony

Gonzalez testified that he represented Alvarez in the underlying criminal proceedings. He testified that he spoke with Alvarez immediately after sentencing about a number of issues, but that Alvarez did not ask him to appeal during that conversation. Moreover, he did not recall Alvarez asking him at any time to appeal his case. He did recall, however, that either Alvarez, Jr. or Patti Booth contacted him months after the sentencing in an attempt to arrange some sort of sentence reduction in exchange for his cooperation in another case.

Gonzalez also denied that he ever told his client that he had a plea agreement for a five-year sentence or for any specific number of years. He also explicitly denied ever telling his client or anyone else that if Alvarez did not get a five-year sentence, he (Gonzalez) would appeal. In fact, he denied ever having promised Alvarez that he would appeal. He further said that, although he has no independent recollection of talking to

Alvarez, Sr., he would not have told Alvarez, Sr. that if his son did not get a five-year sentence, he would appeal. He further credibly testified, consistent with his affidavit, that if Alvarez had asked him to appeal, he would have filed a notice of appeal.

Gonzalez also testified that he had repeatedly advised Alvarez to plead guilty to the misprision of a felony charge that was offered to him early on, but that Alvarez refused to do so and has now received a substantially longer prison sentence as a result. Gonzalez correctly noted, however, that he had argued at sentencing for a downward departure for Alvarez, which the Court granted.

### 7. Booth's Testimony

Patti Booth was the final witness for the government. She denied that she had promised Alvarez that he would get only a five-year sentence. She also denied that she had ever told Gonzalez that Alvarez would only a sentence of five years, or that he would only get *any* specific amount of time. She further denied that she had asked Alvarez to lie to the judge; instead, she emphasized that she had only ever encouraged him and the other defendants to tell the truth.

In explaining the background of the plea negotiations, Booth stated that because Alvarez was so young, and because she believed he was a victim of generational drug trafficking, she initially offered to allow him to plead to misprision of a felony. He rejected that offer. Booth stated that she felt extremely sorry for Alvarez at the time of prosecution, and that she still feels sorry for him because of his young age, and the fact that he was used

11

by his family from a young age in their drug business. On cross-examination, Booth agreed that she reduced the charge to allow Alvarez to plead to an offense with a mandatory minimum of five years, instead of ten years. She also agreed that she made a recommendation to the Court for an offense level of 26.

### III.  DISCUSSION[7]

**A.     Ineffective Assistance of Counsel Based on Alleged Failure to File An Appeal.**

Alvarez contends that his counsel's failure to file an appeal on his behalf constitutes ineffective assistance of counsel. When evaluating an ineffective assistance claim based upon counsel's alleged failure to file an appeal, this Court is guided by Roe v. Flores-Ortega, 528 U.S. 470 (2000). That case explains that where a defendant asks that an appeal be filed, and the attorney does not file one, the attorney's conduct is deficient.

The primary factual dispute on this issue is whether Alvarez requested that Gonzalez file an appeal, as he contends. The Court had the opportunity to view the demeanor and testimony of all the witnesses, and to evaluate the credibility of Alvarez, on the one hand, and Gonzalez on the other. Notably, it is Alvarez's burden to persuade the Court that he more likely than not requested that Gonzalez appeal. See United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999) (a § 2255 movant has the burden of proof to show that his counsel was ineffective). The Court finds that Alvarez has failed to meet that burden.

---

[7] The general standards for granting § 2255 relief and the general standards governing claims of ineffective assistance of counsel were set forth in the Court's prior order and will not be repeated here. (See D.E. 190 at 3-4).

As the Court noted at the hearing, it does not find much of Alvarez's testimony credible. Moreover, Alvarez and his father both have reason to fabricate stories – Alvarez to succeed in his § 2255 motion, and his father to assist his son, whose criminal activity and prison sentence he feels responsible for. On the other hand, neither Gonzalez nor Guy Williams have any reason to lie to the Court about what they told their clients. Moreover, the Court believes Gonzalez's testimony that, had he been asked to file an appeal, he would have done so. Gonzalez's version is further buttressed by the absence of any corroborating evidence showing timely follow-up by Alvarez, Jr. to determine the status of his appeal. For all of these reasons, the Court discounts the testimony of Alvarez, Solis, and Alvarez, Sr., and credits the testimony of Gonzalez. Accordingly, the fact that Gonzalez did not file an appeal was not *per se* deficient, because the Court finds that Alvarez never asked him to appeal. See Flores-Ortega, 528 U.S. at 478.

The Court turns next, then, to the issue of whether Gonzalez **consulted** with Alvarez about an appeal. As explained by the Supreme Court in Flores-Ortega:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question of whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. . . . If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow

the defendant's express instructions with respect to an appeal.

528 U.S. at 478. Gonzalez testified that he consulted with Alvarez concerning his appellate rights. (Rec. at 11:51). Alvarez does not dispute this. Accordingly, the Court concludes that Gonzalez was not deficient.

In short, Alvarez was not denied effective assistance of counsel as a result of Gonzalez's failure to appeal, and his § 2255 claim on this ground is DENIED.

## B.     Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Alvarez has not explicitly requested a COA,[8] this Court nonetheless addresses whether he would be entitled to one. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under

---

[8] Alvarez filed a notice of appeal (D.E. 329) after the Court's oral ruling at the evidentiary hearing. That notice will be effective upon the entry of this order and final judgment and will be deemed filed as of that date. See Fed. R. App. P. 4(a)(2).

§ 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to a claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Alvarez's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, Alvarez is not entitled to a COA.

## IV. CONCLUSION

For the foregoing reasons, and for the reasons stated on the record at the July 6, 2006 evidentiary hearing, Alvarez's ineffective assistance claim based on a failure to appeal is DENIED. Alvarez is also DENIED a certificate of appealability.

ORDERED this 31st day of July, 2006.

                                        HAYDEN HEAD
                                        CHIEF JUDGE